Daniel J. Herling SBN 103711
djherling@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO PC
44 Montgomery St., 36th Floor
San Francisco, California 94104
Telephone: (415) 432-6000
Facsimile: (415) 432-6001

Bridget A. Moorhead SBN 166298
bamoorhead@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO PC
3580 Carmel Mountain Road, Suite 300
San Diego, California 92130
Telephone: (858) 314-1500
Facsimile: (858) 314-1501

Daniel S. Silverman SBN 137864
dssilverman@Venable.com
VENABLE LLP
2049 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 229-9900
Facsimile: (310) 229-9901

Attorneys for Defendant,
WALGREEN CO. INC.

IN UNITED STATES DISTRICT COURT FOR THE

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIELLE DEMISON and TERI SPANO, on behalf of themselves, all others similarly situated, and the general public,<br><br>                    Plaintiffs,<br><br>vs.<br><br>WALGREEN CO. INC., an Illinois corporation; DOES 1-20, inclusive,<br><br>                    Defendants. | Case No.: **'14CV0306 LAB WVG**<br><br>**DEFENDANT WALGREEN CO. INC.'S NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, AND 1453** |

1

NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT

# NOTICE OF REMOVAL

TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA; TO THE SUPERIOR COURT FOR THE STATE OF CALIFORNIA, COUNTY OF SAN DIEGO; TO PLAINTIFFS; AND TO PLAINTIFFS' COUNSEL OF RECORD:

Please take notice that, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, Defendant Walgreen Co. Inc. ("Walgreen") hereby removes the above-captioned action from the Superior Court for the State of California, San Diego County, to the United States District Court for the Southern District of California. Diversity jurisdiction exists pursuant to 28 U.S.C. § 1441 and the federal diversity statute as amended by the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(a) and (d). Attached as Exhibit A to this Notice of Removal is a copy of all court filings provided to Walgreen in this action. As grounds for removal, Walgreen states as follows:

## I.   STATE COURT PROCEEDINGS

1. On December 31, 2013, plaintiffs Danielle Demison and Teri Spano ("Plaintiffs") initiated this action by filing a complaint (the "Complaint") purportedly on behalf of themselves, all others similarly situated, and the general public against Walgreen Co. Inc. ("Walgreen" or "Defendant") in the State of California Superior Court, San Diego County, under the caption *Demison, et al. v. Walgreen Co. Inc., et al.*, Case No. 37-2013-00082691-CU-BT-CTL (the "State Court Action").

2. The State Court Action sets forth claims against Walgreen and twenty unnamed defendants (together with Walgreen, the "Defendants") for alleged violations of the California Consumer Legal Remedies Act, Cal. Civ. Code § 1750,

*et seq.*; the California Unfair Competition Law, Cal. Bus. & Profs. Code § 17200, *et seq.*; and the California False Advertising Law, Cal. Bus. & Profs. Code § 17500, *et seq.*; and for alleged breaches of express and implied warranties under California law. These alleged breaches and violations all arise out of Walgreen's advertising, marketing, and labeling of its Walgreens-brand products Walgreens Brand Ear Pain Relief ("Ear Pain Relief") and Well at Walgreens Homeopathic Ear Ache Drops ("Ear Ache Drops" and, together with Ear Pain Relief, the "Products"). Plaintiffs make unique allegations as to each Product marketed and sold by Walgreen, and allege that Walgreen misrepresented the uses, benefits, effectiveness, and other characteristics of both Products. The Complaint seeks compensatory damages, punitive damages, "restitution and disgorgement," declaratory relief, injunctive relief, an award of attorneys' fees and costs, an order "compelling Defendants to engage in a corrective advertising campaign to inform the public concerning the true nature of the Products, including a recall of the falsely and deceptively labeled Products." The Complaint also seeks to certify a class consisting of "[a]ll purchasers of [the Products] in California and states in the United States with consumer protection laws similar to California, for personal or household use and not for resale, from December 30, 2009 to the present" (the "Plaintiff Class"). Walgreen was effectively served with the Complaint on January 10, 2014 via service on its designated service agent, Corporation Service Company.

3. On February 10, 2014, Walgreen timely filed its answer to the Complaint in the State Court Action (the "Answer"). In addition to generally denying the allegations in the Complaint, the Answer also asserts several affirmative defenses, including the defense that Walgreen's labeling of the Products is consistent with federal requirements and that Plaintiffs' claims are therefore pre-empted. Walgreen further maintains that its labeling, marketing,

advertising, and promotion of the Products are not in any way misleading, inaccurate, and/or deceptive. Walgreen also denies that Plaintiffs or anyone they purport to represent have suffered any injuries or damages as the result of any of the alleged conduct attributed to Walgreen.

     4.     This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b). *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 351-52 (1999).

## II. REMOVAL IS PROPER BECAUSE THIS COURT HAS JURISDICTION OVER THE MATTER PURSUANT TO 28 U.S.C. §§ 1332, 1441, AND 1453

     5.     Removal of the State Court Action is proper under 28 U.S.C. §§ 1332(d) and 1453 because this case is (1) a proposed "class action" as defined in 28 U.S.C. §§ 1332(d)(1)(B) (2) wherein the named Plaintiffs are citizens of a state different from Walgreen and (3) the amount in controversy exceeds $5,000,000. Alternatively, removal is proper pursuant to 28 U.S.C. §§ 1332(a) and 1441(a) because (1) there is complete diversity of citizenship between the Plaintiff Class and Walgreen and (2) the amount in controversy exceeds $75,000.

### A. There is Complete Diversity Between the Plaintiff Class and Walgreen

     6.     Complete diversity exists under 28 U.S.C. § 1332 between Plaintiffs and Walgreen. In evaluating diversity for purposes of removal, courts assess an entity's citizenship by examining (1) the state under the laws of which it is organized, and (2) the state of its "principal place of business." 28 U.S.C. § 1333(c)(1); *Davis v. HSBC Bank Nev., N.A.*, 557 F.3d 1027, 1028 (9th Cir. 2009). Under either prong of this rule, Walgreen is not a citizen of the same state as Plaintiffs.

     7.     As alleged in the Complaint, the named Plaintiffs resided in California during the proposed class period, and both still reside in that state. Compl. ¶¶ 4-5.

The Complaint also specifies that the members of the putative Plaintiff Class are purchasers of the Products "in California and states in the United States *with consumer protection laws similar to California*," without specifying more clearly which states meet this broad, vague definition. Compl. ¶ 86.

8. By contrast, at the time the Complaint was filed and up to the filing of this Notice of Removal, Walgreen was and still is organized and existing as a public corporation under the laws of Delaware. *See* Compl. ¶ 6; *accord* Declaration of Heather Hughes in Support of Walgreen Co. Inc.'s Notice of Removal ("Decl.") ¶ 3. Further, as explained below, its principal place of business was, and still is, located in Illinois. Decl. ¶ 4; *accord* Compl. ¶ 6 (alleging that Walgreen's "principal place of business" is located in Deerfield, Illinois).

9. In *Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010), the United States Supreme Court held that the term "principal place of business," for the purposes of the federal diversity jurisdiction statute, refers to the corporation's "nerve center"—that is, "where the corporation's high level officers direct, control, and coordinate the corporation's activities." *Hertz Corp.*, 130 S. Ct. at 1186. The Court noted that, "in practice[,]" this nerve center will "normally be the place where the corporation maintains its headquarters." *Id.* at 1192.

10. Under the *Hertz* analysis, Walgreen is a citizen of Illinois because virtually all of its high level officers live, work, and manage the company from Walgreen's "nerve center" in Illinois. Walgreen's headquarters are located in Deerfield, Illinois, and all of the company's management is operated through that location. Decl. ¶ 4. Its key policies and procedures are all established and administered from that same Deerfield office. *Id.* ¶ 5. Illinois is where the company's high level officers reside, where its corporate minute books and records are maintained, and where substantially all of its critical operational and administrative personnel are based. *Id.* ¶¶ 4-5. By contrast, Walgreen does not

maintain any corporate office or principal place of business in California, nor do any of its officers work or reside in California. *Id.* ¶ 4.

11. For purposes of diversity jurisdiction, therefore, Walgreen is a citizen of either Delaware or Illinois, but not California. At the very least, Walgreen is completely diverse from both named Plaintiffs, as there is no basis for deeming it a citizen of California for diversity purposes. Further, until Plaintiffs specify more clearly which states have "consumer protection laws similar to California" for purposes of defining the class, Walgreen submits that it is completely diverse from the putative members of the Plaintiff Class.

### B.   Removal Is Proper Pursuant to the Class Action Fairness Act

12. This Court has original subject matter jurisdiction over this action pursuant to CAFA. *See* 28 U.S.C. § 1332(d). Under CAFA, a federal district court has original jurisdiction over (1) any "class action" composed of 100 or more putative class members, (2) where *any* member of the proposed class is a citizen of a state different from *any* defendant, and (3) the amount in controversy exceeds $5,000,000 (exclusive of interest and costs). 28 U.S.C. § 1332(d); *see also Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 977-78 (9th Cir. 2013).

#### 1.   The Putative Class Is Sufficiently Numerous

13. As alleged, this case is a class action consisting of at least 100 or more putative class members. The Complaint defines the Plaintiff Class broadly to include "[a]ll purchasers of [the Products] in California and states in the United States with consumer protection laws similar to California, for personal or household use and not for resale, from December 30, 2009 to the present." Compl. ¶ 86. During the relevant class period, Walgreen sold over 450,000 units of the Products throughout the United States. *See* Decl. ¶ 7. The putative class is thus virtually certain to have more than 100 members, and the first CAFA requirement is satisfied.

### 2. At Least Minimum Diversity Exists

14. In this case, the two named Plaintiffs are residents of California, whereas Walgreen is a citizen of either Delaware or Illinois. *See* Part II.A., *supra*. Accordingly, there is at least the minimum diversity of citizenship required under CAFA here. 28 U.S.C. § 1332(d)(2)(A); *Velasquez v. HMS Host USA, Inc.*, 2012 U.S. Dist. LEXIS 172801, at *16 ("CAFA allows for federal jurisdiction where only minimal, rather than complete, diversity exists . . . .") (citing *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 680 (9th Cir. 2006)).

### 3. The Amount Placed in Controversy Exceeds $5,000,000

15. Under CAFA, the amount in controversy requirement may be based on the aggregation of the claims of all the potential class members. 28 U.S.C. § 1332(d)(6). "[W]here it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled," a defendant seeking CAFA removal need only show "by a preponderance of the evidence" that the amount at stake will exceed $5,000,000. *Guglielmino v. McKee Goods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007) (citing *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996); *accord Abrego Abrego*, 443 F.3d at 683 (applying preponderance of the evidence standard to amount in controversy in case removed under CAFA). "Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [the jurisdictional threshold]." *Sanchez*, 102 F.3d at 404. Further, where, as here, a complaint seeks injunctive or other equitable relief, the value of the result sought to be accomplished may be counted in calculating the amount in controversy. *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977); *Guglielmino*, 506 F.3d at 701 (9th Cir. 2007). Accordingly, the amount in controversy includes not only the potential damages the putative class is seeking,

but also the defendant's costs of complying with any injunctive relief sought by the class.

16. Although the Complaint does not set forth a specific *ad damnum*, it seeks (1) compensatory and punitive damages; (2) "restitution and disgorgement of Defendants' revenues from the Products to Plaintiffs and the proposed class members"; (3) injunctive and equitable relief, including but not limited to an order "compelling Defendants to engage in a corrective advertising campaign to inform the public concerning the true nature of the Products, including a recall of the falsely and deceptively labeled Products"; and (4) an award of attorneys' fees. It is not only "more likely than not" but virtually certain that, aggregated across the putative class, these damages and costs would easily exceed $5,000,000.

17. To begin with, Plaintiffs seek both compensatory and restitutionary damages for a sprawling class consisting of all purchasers of the Products in California and in all other states with consumer protection laws "similar to California." The Complaint also specifically seeks to force Walgreen to disgorge all its revenues from sales of the Products during the class period. Given that Walgreen's sales of the Products from 2010 to 2014 exceeded $4,000,000, the Complaint's request for restitution and disgorgement would, by itself, nearly satisfy the jurisdictional threshold. *See* Decl. ¶ 7.

18. Walgreen would also face substantial costs in complying with injunctive relief in this action, particularly a large-scale repackaging, relabeling, and recall of the Products across all states "with consumer protection laws similar to California." Walgreen sells the Products in stores bearing the Walgreens name throughout the United States. Decl. ¶ 6. If an injunction was issued against Walgreen targeting its sale and labeling of the Products in any state, Walgreen would have to engage in a massive nationwide effort to relabel and/or recall its

Products and to issue new advertisements in order to guarantee its compliance. *Id.* ¶ 8.

19.     Such an injunction would therefore inflict two major types of potential losses on Walgreen. *Id.* ¶ 10. The first category consists of costs and losses relating to effecting a complete relabeling and repackaging of the Products still within Walgreen's control, such as the inventory currently on its stores' shelves. *Id.* As the accompanying declaration makes clear, there is simply no practicable way for Walgreen to change the labels and packages for its Products on a piecemeal, state-by-state basis. *See id.* ¶ 9. Walgreen has one label for each of the Products, and that label is uniform nationwide. *Id.* In order to relabel the substantial numbers of Products within its control, therefore, Walgreen would have to pull and repackage the products from all its stores nationwide—not just those in California or a specific number of targeted states alone. *Id.* Taking into account such expenses as printing/packaging costs and transportation for the affected units, Walgreen estimates that it would incur costs and losses in excess of $2 million just in repackaging and relabeling its complete inventory of the Products. *Id.* ¶ 10.

20.     The second category consists of the costs and losses from effecting a nationwide recall and refund for Products already sold to consumers in California and all states deemed to have similar consumer protection laws. *See* Decl. ¶ 11. Pursuant to any recall, Walgreen would be required to pay refunds to consumers approximating its total sales of the Products in those states. *Id.* Taking into account the value of these refunds as well as the costs of implementing the recall, Walgreen would likely lose more than $4 million as a result of a recall and refund of the Products already sold. *Id.* In addition, Walgreen would likely lose at least $1 million in sales due to the Products being off retail shelves, the likely loss of consumer confidence caused by a recall, and the accompanying loss in sales of other Walgreen products. *Id.*

21. In addition to these remedies, the Complaint seeks punitive damages, which could ultimately be set as a multiple of compensatory and restitutionary damages. Such damages count towards the amount in controversy requirement and would likely exceed $5 million standing alone. *See Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001); *Molnar v. 1-800-Flowers.com*, No. CV 08-0542 CAS (JCx), 2009 U.S. Dist. LEXIS 131768, at *16 (C.D. Cal. Feb. 23, 2009) ("In general, claims for punitive damages are considered in determining the amount in controversy, as long as punitive damages are available under the applicable law."); *Yeroushalmi v. Blockbuster Inc.*, No. CV 05-2550 AHM (RCx), 2005 U.S. Dist. LEXIS 39331, at *17 (C.D. Cal. July 11, 2005) ("Under CAFA, it is plaintiff's burden to show that punitive damages will be limited in such a way as to avoid meeting the jurisdictional amount."); *Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447, 450 (S.D. Cal. 1995).

22. The Complaint also demands attorneys' fees, which count towards the jurisdictional minimum if authorized by statute. *See Guglielmino*, 506 F.3d at 700 (noting that the "amount-in-controversy requirement excludes only 'interest and costs' and therefore includes attorneys' fees"); *Free v. Abbott Lab (In re Abbott Lab)*, 51 F.3d 524, 526 (5th Cir. 1995); *Yeroushalmi*, 2005 U.S. Dist. LEXIS 39331, at *17; *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010 (N.D. Cal. 2002). Here, if Plaintiffs and/or the putative class succeed on their claims under the California Consumer Legal Remedies Act, recovery of attorneys' fees is authorized by statute. *See* Cal. Civ. Code § 1780(e). "[T]he Ninth Circuit recognizes two methods for calculating attorneys' fees—the Lodestar/Multiplier Method and the Percentage Method." *Zucker v. Occidental Petroleum Corp.*, 968 F. Supp. 1396, 1400 (C.D. Cal. 1997). When using the Lodestar/Multiplier Method, a court "calculates the 'lodestar' by multiplying the reasonable hours expended by a reasonable hourly rate." *Id.* (quoting *In re Washington Pub. Power*

*Supply Sys. Sec. Litig.*, 19 F.3d 1291 n.2 (9th Cir. 1994)). "The court may then enhance the lodestar with a 'multiplier,' if necessary, to arrive at a reasonable fee." *Id.* By contrast, under the Percentage Method, the court "simply awards the attorneys a percentage of the fund sufficient to provide plaintiffs' attorneys with a reasonable fee." *Id.* Courts in this Circuit have held in previous cases that a 25% take is an appropriate amount for attorneys' fees. *Station v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003). In this case, assuming an amount of $4,080,445 awarded as restitution alone, an award of attorneys' fees under either approach would more likely than not increase the amount in controversy above the jurisdictional threshold. *See* Decl. ¶ 7.

23. In short, Walgreen has shown more than a reasonable probability that the amount placed in controversy in this action would exceed $5,000,000, and removal is therefore proper.

### C. This Court Also Has Diversity Jurisdiction Without Invoking CAFA

24. While removal is proper under CAFA, this Court also has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) and 1441 because there is complete diversity of jurisdiction and the amount in controversy exceeds $75,000. *See* Part II.A, B.

### IV. WALGREEN HAS SATISFIED ALL OTHER STATUTORY REQUIREMENTS

25. Venue is proper in this District under 28 U.S.C. §§ 1391(a), 1391(b)(1)-(2), and 1441(a) because Plaintiffs filed the Complaint in San Diego County, and this District represents the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Walgreen will promptly serve Plaintiffs with this Notice of Removal and will promptly file a copy with the

clerk of the Superior Court of the State of California, San Diego County, where the State Court Action is pending. 28 U.S.C. § 1446(d).

## CONCLUSION

WHEREFORE, Defendant Walgreen Co. Inc. respectfully removes this action from the Superior Court of the State of California, San Diego County, to the United States District Court for the Southern District of California.

Dated: February 10, 2014    MINTZ LEVIN COHN FERRIS GLOVSKY
AND POPEO PC

By: *Bridget Moorhead*
Daniel J. Herling
Bridget A. Moorhead

VENABLE LLP
Daniel S. Silverman

Attorneys for Defendant,
WALGREEN CO. INC.